IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DENISE E. THORPE, TH.D., <br><br> Plaintiff, <br><br> v. <br><br> PITTSBURGH THEOLOGICAL SEMINARY, <br><br> Defendant. | 2:24-CV-01275-CCW |

**OPINION**

Before the Court is Defendant Pittsburgh Theological Seminary's ("PTS") Motion to Dismiss Plaintiff Denise E. Thorpe's First Amended Complaint ("FAC"). ECF No. 18. For the reasons set forth below, the Court will grant the Motion and dismiss this case without prejudice.

**I.     Background**

This case ("*Thorpe II*") was originally filed in the Pennsylvania Court of Common Pleas for Allegheny County in August 2024. ECF No. 1. In September 2024, PTS removed *Thorpe II* to this Court. *Id.* *Thorpe II* is the second case brought by Dr. Thorpe against PTS that is currently pending before the undersigned. The first case is *Thorpe v. Pittsburgh Theological Seminary*, No. 2:24-cv-194-CCW, (W.D. Pa.) ("*Thorpe I*"), which Dr. Thorpe filed in this Court in February 2024. *Thorpe I*, ECF No. 1. Shortly after removing *Thorpe II*, PTS moved to consolidate it with *Thorpe I*. ECF No. 3. Dr. Thorpe consented to consolidation. ECF No. 6. Ultimately, however, the Court declined to consolidate the two cases because fact discovery was almost complete in *Thorpe I*, and in *Thorpe II*, PTS had just filed a Motion to Dismiss. ECF No. 12. Thus, the Court concluded that consolidation would not result in judicial economy. *Id.*

While there are differences in the legal theories alleged, both *Thorpe I* and *Thorpe II* ultimately arise from PTS's decision not to hire Dr. Thorpe for the position of permanent Director of its Doctor of Ministry ("D.Min.") program.[1] *Compare* ECF No. 16, *with Thorpe I*, ECF No. 1. The thrust of the allegations in *Thorpe I* is that PTS discriminated and retaliated against Dr. Thorpe when it decided not to select her for the permanent Director of D.Min. position.[2] *See generally Thorpe I*, ECF No. 1.  The FAC in *Thorpe II* includes those same factual allegations of discrimination and retaliation but focuses on how PTS's actions allegedly contradicted specific representations PTS made in its anti-discrimination policy and in the job posting for the Director of D.Min. position, rendering those representations false and/or misleading. *See generally* ECF No. 16. While the FAC does not expressly state as much, Dr. Thorpe appears to allege two theories of how PTS's representations were deceptive. First, she alleges that PTS's "pledged anti-discrimination stance" was "not taken seriously" and constituted "fraud and false advertising" because PTS discriminated against Dr. Thorpe and retaliated against her for reporting discrimination against PTS employees.[3] ECF No. 16 ¶¶ 157–60, 167, 171, 179. Second, she alleges that PTS's representations that its students and faculty were covered by applicable anti-discrimination laws were misleading because in *Thorpe I* PTS has taken the position that those

---

[1] PTS is an institution of post-secondary education, and the Director of its D.Min. program "is responsible for student support, course organization/support, communications about the program, recruiting, and admissions." ECF No. 16 ¶¶ 3, 10.

[2] The Complaint in *Thorpe I* asserts five claims against PTS, including federal claims for sex discrimination, retaliation, and hostile work environment retaliation in violation of Title IX (Counts I, II and III) and retaliation in violation of 42 U.S.C. § 1981 (Count IV), as well as a state law claim for breach of contract (Count V). *Thorpe I*, ECF No. 1.

[3] The anti-discrimination policy states, in pertinent part: "Pittsburgh Theological Seminary forbids discrimination on the basis of race, color, sex, sexual orientation, gender identity, cultural background, national origin, religion, veteran's status, disability or handicap, age, ancestry, and genetic information.  Pittsburgh Theological Seminary likewise prohibits retaliation for raising a concern of complaint of discrimination." ECF No. 16 ¶ 24. It further states that "[a]nyone within the Seminary community, including students, faculty, and employees who witness any violation of this policy must report the violation." *Id.* ¶ 28.

laws do not apply to the Director of the D.Min program because that role qualifies for the First Amendment's "ministerial exception."[4] *See id.* ¶¶ 23–36, 73, 147–48.

The FAC asserts eight claims against PTS, including federal claims for false advertising in violation of the Lanham Act, 15 U.S.C. §§ 1125 *et seq.* (Count II) and retaliation and hostile work environment in violation of 42 U.S.C. § 1981 (Count VI) and Title IX, 20 U.S.C. § 1681 (Count VII), as well as state law claims for violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL") (Count I), negligent misrepresentation (Count III), fraud (Count IV), breach of contract (Count V), and unjust enrichment (Count VIII). ECF No. 16 ¶¶ 174–269.[5]

PTS has moved to dismiss the FAC pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. ECF No. 18. The Motion is fully briefed and ripe for resolution. ECF Nos. 19, 22, 23, 26.

## II.     Legal Standard

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a claim. In reviewing a motion to dismiss, the court accepts as true a complaint's factual allegations and views them in the light most favorable to the plaintiff. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). Although a complaint need not contain detailed factual allegations to survive a motion to dismiss, it cannot rest on mere labels and conclusions. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). That is, "a formulaic recitation of the

---

[4] The ministerial exception is grounded in the First Amendment to the United States Constitution and requires courts "to stay out of employment disputes involving those holding certain important positions with churches and other religious institutions." *Our Lady of Guadalupe Sch. v. Morrissey-Berru*, 591 U.S. 732, 746 (2020). In *Thorpe I*, PTS has argued that the ministerial exception applies to the Director of D.Min position and therefore Dr. Thorpe's claims are barred. *See, e.g.*, *Thorpe I*, ECF No. 46 at 2–13.

[5] The Court has jurisdiction over Dr. Thorpe's federal claims under 28 U.S.C. § 1331 and supplemental jurisdiction over her state-law claims under 28 U.S.C. § 1367.

elements of a cause of action will not do." *Id.* Accordingly, "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id.*, and be "sufficient . . . to 'state a claim to relief that is plausible on its face,'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

The United States Court of Appeals for the Third Circuit has established a three-step process for district courts to follow in analyzing a Rule 12(b)(6) motion:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

*Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011) (quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010)). That said, under Rule 8's notice pleading standard, even after the Supreme Court's decisions in *Twombly* and *Iqbal*, a plaintiff need only "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of her claims." *Connolly v. Lane Constr. Corp.*, 809 F.3d 780, 788–89 (3d Cir. 2016) (finding that "at least for purposes of pleading sufficiency, a complaint need not establish a *prima facie* case in order to survive a motion to dismiss").

### III. Legal Analysis

For the reasons discussed more fully below, the Court will dismiss the FAC without prejudice because the claims it asserts could have been brought in *Thorpe I* and allowing this case to proceed concurrently with *Thorpe I* would result in duplicative litigation.

4

### A. The Claim-Splitting Doctrine Bars *Thorpe II*

The claim-splitting doctrine "requires district courts to 'carefully insure[] that the plaintiff does not use the tactic of filing two substantially identical complaints to expand the procedural rights he would have otherwise enjoyed,'" with a particular eye towards ensuring "that the plaintiff does not . . . fil[e] duplicative complaints [to circumvent] the rules pertaining to the amendment of complaints." *McKenna v. City of Phila.*, 304 F. App'x 89, 91 (3d Cir. 2008) (quoting *Walton v. Eaton Corp.*, 563 F.2d 66, 70–71 (3d Cir. 1977)); *see also Hanna v. S-L Distrib. Co., LLC*, No. 1:19-CV-2143, 2021 WL 51581, at *3 (M.D. Pa. Jan. 6, 2021) ("The split claims doctrine dictates that '[p]laintiffs generally must bring all claims arising out of a common set of facts in a single lawsuit.'") (quoting *Elgin v. Dep't of Treasury*, 567 U.S. 1, 34 (2012) (Alito, J., dissenting)). Thus, "when two cases: (1) take place in the same court; (2) with the same defendants; (3) involving the same subject matter," the claim-splitting doctrine applies, and the district court may, in its discretion, consolidate the two actions, stay the later-filed action pending resolution of the first, or dismiss the later-filed action without prejudice. *McKenna*, 304 F. App'x at 92–93 (citing *Walton*, 565 F.2d at 70–71). "A court's decision to dismiss a new complaint under the claim-splitting doctrine is subject to the abuse of discretion standard of review." *Acosta v. Gaudin*, No. 2:17-CV-366, 2017 WL 4685548, at *2 (W.D. Pa. Oct. 18, 2017) (Hornak, J.) (quoting *Schneider v. United States*, 301 F. App'x 187, 190 (3d Cir. 2008)).

PTS argues that the claim-splitting doctrine bars *Thorpe II* because the claims asserted in the FAC could have (and should have) been asserted in *Thorpe I*. ECF No. 19 at 4–5. Dr. Thorpe does not contest that *Thorpe I* and *Thorpe II* are both pending before this Court, and that both cases name PTS as the sole Defendant. ECF No. 22 at 3–5. However, Dr. Thorpe does contend that *Thorpe I* and *Thorpe II* do not involve the same subject matter and therefore the claim-splitting doctrine does not apply. *Id.* Dr. Thorpe further argues that even if *Thorpe I* and *Thorpe II* do

5

involve the same subject matter, PTS has consented to the splitting of Dr. Thorpe's claims, and in any event, consolidation of this case with *Thorpe I* is a more appropriate remedy than dismissal. *Id.* Because the Court concludes that *Thorpe I* and *Thorpe II* involve the same subject matter, PTS has not consented to the splitting of Dr. Thorpe' claims, and consolidation is not an appropriate remedy, the Court will dismiss this case without prejudice.

### 1.   *Thorpe I* and *Thorpe II* Involve the Same Subject Matter

The claim-splitting doctrine applies in *Thorpe II* because it involves the same subject matter as *Thorpe I*. Two cases "need not be actually identical to involve the same subject matter." *Acosta*, 2017 WL 4685548, at *3 (citing *McKenna*, 304 F. App'x at 92). Rather, cases can still involve the same subject matter when they present "purely semantic" differences and generally rely on "the same operative facts and legal principles." *Id.* (quoting *McKenna*, 304 F. App'x at 92); *see Walton*, 563 F.2d at 71 (proscribing "substantially identical complaints"); *Matthews Int'l Corp. v. Lombardi*, No. 2:20-CV-00089-NR, 2020 WL 1309399, at *1 (W.D. Pa. Mar. 19, 2020) (Ranjan, J.) (finding two cases involved the same subject matter despite "slight differences in causes of action and intended relief" because they involved "substantially similar facts and legal principles"); *Rice v. Nathan Rice, Inc.*, No. 2:22-CV-874-RJC, 2023 WL 2743441, at *5 (W.D. Pa. Mar. 31, 2023) (Colville, J.) ("[T]he fact that Plaintiff's present Complaint seeks different relief than the amended complaint in *Rice I* and the fact that it sets forth new claims are not alone sufficient to establish that Plaintiff has not engaged in claim splitting.").

PTS argues that *Thorpe I* and *Thorpe II* involve the same subject matter because the FAC "recite[s] the same factual circumstances as those currently recited in [*Thorpe I*], adding only the nondiscrimination language upon which [Dr. Thorpe] now bases her new claims." ECF No. 19 at 5. PTS further contends that each "[e]ach of the FAC's new claims is dependent upon [Dr. Thorpe's] underlying thesis that [PTS] acted in a discriminatory or retaliatory manner – a thesis

which [is the basis of the claims in *Thorpe I*]." *Id.* Dr. Thorpe responds that because the claims in *Thorpe II* are "predicated on the assurances made by PTS administrators [that the applicable anti-discrimination laws applied to Dr. Thorpe and the Director of D.Min. position]," and that PTS only disavowed those assurances during the course of litigating *Thorpe I*, "Dr. Thorpe [was] unaware of the extent and scope of the misrepresentation at the time she filed [*Thorpe I*] and, as such, the doctrine of claim-splitting does not bar [*Thorpe II*]." ECF No. 22 at 4.

The Court agrees with PTS that *Thorpe I* and *Thorpe II* share the same subject matter. The facts underpinning *Thorpe I* and *Thorpe II* are essentially identical. At their core, both cases are based on Dr. Thorpe's allegation that PTS discriminated and retaliated against her when it decided not to choose her to become the next full-time Director of the D.Min. program. *Compare, e.g.*, ECF No. 16 ¶¶ 155–56 ("Dr. Thorpe was not hired on a permanent basis on account of her gender. Dr. Thorpe was also not hired on a permanent basis because of her advocacy on behalf of staff and students from minority backgrounds, as well as because of her criticism of the PTS administration."), *with Thorpe I*, ECF No. 1 ¶¶ 128–29 (making the same allegation). The only new facts alleged in *Thorpe II* are the substance of PTS's representations in its anti-discrimination policy and the job posting for the permanent Director of D.Min position. *See, e.g.*, ECF No. 16 ¶¶ 24–36, 73; *Thorpe I*, ECF No. 1. But the addition of those representations does not render *Thorpe II* meaningfully different from *Thorpe I*.

First, to the extent that *Thorpe II* alleges that PTS did not live up to its own anti-discrimination policy and therefore that policy was deceptive, the success of *Thorpe II* depends on whether the claims in *Thorpe I* have merit. In *Thorpe I*, Dr. Thorpe alleges that she was discriminated and retaliated against, and in *Thorpe II*, she alleges that because she was discriminated and retaliated against, PTS's anti-discrimination policy was false and/or misleading.

7

*Compare Thorpe I*, ECF No. 1, *with, e.g.*, ECF No. 16 ¶¶ 179 ("The fact that Dr. Thorpe was punished for acting consistently with the Seminary's policy indicates that the policy itself was bogus and that the statement on the website was deceptive."), 192 (making same allegation), 211 ("The fact that the Seminary was not serious in terms of pursuing anti-racist and anti-sexist measures was made manifest when Dr. Lee and other PTS administrators singled Dr. Thorpe out for retaliation when she raised concerns."), 238 ("The Seminary's retaliatory actions towards Dr. Thorpe were in violation of its own policy and constitute a material breach of any contractual agreement"). Thus, the viability of both cases depends on whether PTS discriminated and retaliated against Dr. Thorpe. In other words, "the difference between [*Thorpe I* and *Thorpe II*] is 'purely semantic' and both cases rely on 'the same operative facts and legal principles.'" *Acosta*, 2017 WL 4685548, at *3 (quoting *McKenna*, 304 F. App'x at 92).

Second, to the extent *Thorpe II* is based on PTS's litigation position in *Thorpe I* that the "ministerial exception" bars Dr. Thorpe's claims, the FAC in *Thorpe II* alleges essentially the same facts as in *Thorpe I* and raises claims that could have been brought in *Thorpe I*. In *Thorpe II*, Dr. Thorpe argues that, in light of PTS's litigation position in *Thorpe I* that the ministerial exception exempts the Director of D.Min position from applicable anti-discrimination laws, PTS's representations indicating that anti-discrimination laws applied to the Director of D.Min position were false and misleading.[6] ECF No. 22 at 3–4. While that specific legal theory is not alleged in *Thorpe I*, it ultimately springs from the claims and defenses asserted in *Thorpe I*. Dr. Thorpe contends that this theory could not have been alleged in *Thorpe I* because she was "unaware of the extent and scope of the misrepresentation at the time she filed [*Thorpe I*]." *Id.* at 4. But PTS raised

---

[6] Only Count III in the FAC appears to expressly allege this theory as a basis for liability. *See* ECF No. 16 ¶ 201 ("PTS misrepresented that federal and state anti-discrimination laws applied to its position, including, but not limited to, the D. Min. Program Director position.")

the ministerial exception as a defense in its Answer and in a Motion for Judgment on the Pleadings in *Thorpe I*, both of which were filed before the deadline for Dr. Thorpe to move to amend the Complaint in *Thorpe I*.[7]  *See Thorpe I*, ECF No. 8 ¶¶ 247, 255–56;  *Thorpe I*, ECF No. 22 at 4–11; *Thorpe I*, ECF No. 15.  Thus, Dr. Thorpe could have moved to amend the Complaint in *Thorpe I* to include the claims she now brings in *Thorpe II*, or at least sought an extension of time to offer a proposed amended complaint in *Thorpe I* once PTS's litigation position became clear.  Instead, Dr. Thorpe filed *Thorpe II* months after the deadline to amend the Complaint in *Thorpe I* had passed, and while *Thorpe I* was well into fact discovery.  The claim-splitting doctrine bars that approach.  *See McKenna*, 304 F. App'x at 91 (3d Cir. 2008) (quoting *Walton*, 563 F.2d at 71) (explaining that courts should apply the claim-splitting doctrine to ensure "that the plaintiff does not use the incorrect procedure of filing duplicative complaints [to circumvent] the rules pertaining to the amendment of complaints"); *Acosta*, 2017 WL 4685548, at *4 ("Perhaps hypothesizing that the Court might be less than amenable to [an] amendment request . . . well after significant amounts of discovery occurred, the Secretary filed an entirely new action in order to dodge those issues.  But, the Secretary may not avoid a possible negative ruling by filing a wholly separate case.  The law requires the Secretary to roll those dice at the table where he is already seated.") (internal quotation omitted).

Accordingly, for all of the foregoing reasons[8] the Court concludes that *Thorpe I* and *Thorpe II* share the same subject matter and the claim-splitting doctrine applies to *Thorpe II*.

---

[7] Indeed, per the undersigned's Practices and Procedures, PTS's Motion for Judgment on the Pleadings included a certificate of conferral verifying that PTS's counsel met and conferred with Dr. Thorpe's counsel prior to filing that motion regarding the issues raised therein.  *Thorpe I*, ECF No. 21-1.

[8] In addition to the issues discussed above, the Court also notes that the FAC in *Thorpe II* asserts several causes action that appear duplicative of the ones asserted in *Thorpe I*.  *Compare* ECF No. 16 ¶¶ 220–261 (asserting claims for breach of contract and retaliation/hostile work environment in violation of 42 U.S.C. § 1981 and Title IX), *with Thorpe I*, ECF No. 1 ¶¶ 142–182 (asserting claims for breach of contract, retaliation, and hostile work environment in violation of Title IX, and retaliation in violation of 42 U.S.C. § 1981).

### 2. PTS Did Not Consent to the Splitting of Dr. Thorpe's Claims

Dr. Thorpe argues that even if the claim-splitting doctrine applies, PTS "acquiesce[d] to the splitting of [Dr. Thorpe's claims]" because PTS filed a Motion to Consolidate *Thorpe II* with *Thorpe I* shortly after removing *Thorpe II* to this Court. ECF No. 22 at 5; ECF No. 3. But the cases cited by Dr. Thorpe to support this argument are inapposite. First, Dr. Thorpe cites a non-precedential Ninth Circuit case that involved a consolidation motion filed by the *plaintiff*, which the defendants opposed. *See RA Med. Sys., Inc. v. PhotoMedex, Inc.*, 373 F. App'x 784, 787 (9th Cir. 2010) (finding that defendants acquiesced in plaintiff's claim splitting in light of the defendants' "opposition to [plaintiff's] consolidation motion"). Second, Dr. Thorpe cites a district court case from the Eastern District of Pennsylvania where the defendants asked the court to stay the later-filed case, thereby implicitly consenting to splitting the plaintiff's claims. *See Coover v. Saucon Valley Sch. Dist.*, 955 F. Supp. 392, 410 (E.D. Pa. 1997).

Here, PTS has never indicated—either expressly or implicitly—that it consents to Dr. Thorpe splitting her claims. To the contrary, after removing *Thorpe II*, PTS immediately moved to consolidate it with *Thorpe I*, and when the Court declined to do so given that *Thorpe I* was already deep into fact discovery, PTS filed the instant Motion to Dismiss asking the Court to dismiss *Thorpe II* as duplicative claim-splitting. *See* ECF Nos. 3, 12, 18, 19. Accordingly, there is no indication that PTS has consented to Dr. Thorpe splitting her claims, and the Court declines to make that conclusion.

### 3. Dismissal of *Thorpe II* Without Prejudice is an Appropriate Remedy

Finally, Dr. Thorpe argues that even if the claim-splitting doctrine applies, consolidation of *Thorpe II* with *Thorpe I* is a more appropriate remedy than dismissal without prejudice. ECF

No. 22 at 4–5. To support this contention, Dr. Thorpe cites *Matthews Int'l Corp.*, 2020 WL 1309399, at *2. There, the court determined that consolidation was "an appropriate remedy to the problem of claim splitting." *Id.* But the court made that determination "[i]n light of the infancy of both *Matthews I* and *Matthews II* . . . to promote judicial efficiency." *Id.*

Here, the Court has already determined that consolidation of *Thorpe I* and *Thorpe II* is not appropriate because "the actions are proceeding on different courses which will not result in judicial economy." ECF No. 12. Indeed, fact discovery is complete in *Thorpe I*, and the Court recently denied-in-part PTS's Motion for Summary Judgment, *Thorpe I*, ECF No. 70, while fact discovery has not yet begun in *Thorpe II*. Accordingly, the Court concludes that dismissal of *Thorpe II* without prejudice, rather than consolidation, is appropriate. *See Rice*, 2023 WL 2743441, at *5 (applying the claim-splitting doctrine and dismissing a case without prejudice); *Acosta*, 2017 WL 4685548, at *4–5 (same).

### IV.    Conclusion

For the foregoing reasons, PTS's Motion to Dismiss will be **GRANTED**, as set forth more fully in the accompanying Order.

DATED this 18th day of June, 2025.

BY THE COURT:

/s/ Christy Criswell Wiegand
CHRISTY CRISWELL WIEGAND
United States District Judge

cc (via ECF email notification):

All Counsel of Record